UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELISSA CHAPPELL, et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>BOIRON, INC.,<br><br>        Defendant. | Case No. 22-cv-00035-JST<br><br>**ORDER DENYING MOTION TO DISMISS**<br><br>Re: ECF No. 26 |

Before the Court is Defendant Boiron, Inc's motion to dismiss. ECF No. 26. The Court will deny the motion.

## I. BACKGROUND

In this putative class action, Plaintiffs Melissa Chappell and Kylie Putney allege that the labels on the arnica products Defendant Boiron, Inc. markets and sells under its Arnicare brand falsely state that the products provide pain relief. Plaintiffs allege that the pain relief labels on the Arnicare products are false because "(1) the active ingredient [in them], arnica montana, does not provide pain relief; and (2), even if it could [do so] under some circumstances, the dosage is far too low to provide any physiological benefit." ECF No. 25 at 2. Plaintiffs bring six claims: (1) breach of express warranty, (2) breach of implied warranty of merchantability, (3) fraud, (4) violation of California's Consumers Legal Remedies Act, California Civil Code § 1750, et seq., (5) violation of California's false advertising law, California Business & Professions Code § 17500 et seq., and (6) unlawful business practices in violation of California's Unfair Competition Law ("UCL"), Business & Professions Code §§ 17200 et seq.

Boiron moves to dismiss the complaint in its entirety under Rule 12(b)(6), Rule 12(b)(1), and on grounds of preemption and primary jurisdiction. Boiron raises four arguments under Rule

12(b)(6). First, Boiron argues that Plaintiffs' breach of warranty claims should be dismissed because Plaintiffs "are unable to demonstrate that the [Arnicare] products generally did not or will not provide any pain relief." ECF No. 26 at 24. Second, Boiron argues that Plaintiffs' fraud-based claims, i.e., their common law fraud, CLRA, FAL, and UCL claims, should be dismissed because they do not meet the particularity requirements of Rule 9. Third, Boiron argues that Plaintiffs' CLRA, FAL, and UCL claims should be dismissed because they rest on a lack-of-substantiation theory, which is not actionable under California law. Fourth, Boiron argues that Plaintiffs' FAL claim fails because Plaintiffs have not shown that Boiron made claims that are false or misleading. Boiron makes two arguments under Rule 12(b)(1). First, it argues that Plaintiffs lack standing to assert claims for products they did not buy. Second, it contends that Plaintiffs lack standing to sue for injunctive relief.[1] Finally, Boiron argues that Plaintiffs' claims fail under the doctrines of preemption and primary jurisdiction.

## II. JURISDICTION

This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A), because: (i) the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, (ii) there are 100 or more putative class members, and (iii) the parties are minimally diverse. This Court has supplemental jurisdiction over any state-law claims under 28 U.S.C. § 1367.

## III. LEGAL STANDARDS

### A. Rule 12(b)(6)

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure "is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). A complaint need not contain detailed factual allegations, but facts pleaded by a plaintiff must be "enough to raise a right to relief above the speculative

---

[1] After Boiron filed its motion to dismiss, Plaintiffs abandoned their claim for injunctive relief. ECF No. 30 at 28 n.9. The Court dismisses that claim.

2

level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While this standard is not a probability requirement, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quotation marks and citation omitted). In determining whether a plaintiff has met this plausibility standard, a court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the plaintiff. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

Fraud claims are governed by the heightened pleading standard of Rule 9(b), which requires that "a party . . . state with particularity the circumstances constituting fraud or mistake" but allows that "[m]alice, intent, knowledge, and other conditions of a person's mind . . . be alleged generally." Fed. R. Civ. P. 9(b). Allegations of fraud must "be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong. Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (simplified).

**B.     Rule 12(b)(1)**

A plaintiff has standing to sue in federal court only if she has (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "A suit brought by a plaintiff without Article III standing is not a 'case or controversy,' and an Article III federal court therefore lacks subject matter jurisdiction over the suit." *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004). "In that event, the suit should be dismissed under Rule 12(b)(1) [of the Federal Rules of Civil Procedure]." *Id.* "A Rule 12(b)(1) jurisdictional attack may be facial or factual. In a facial attack, the challenger asserts that the allegations contained in a

3

1  complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual
2  attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise
3  invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)
4  (citation omitted).

## IV.   DISCUSSION

### A.   Rule 12(b)(6)

#### 1.   Breach of Warranty

"Under California law, to state a claim for breach of express warranty, Plaintiff must allege that the seller: (1) made an affirmation of fact or promise or provided a description of its goods; (2) the promise or description formed the basis of the bargain; (3) the express warranty was breached; and (4) the breach caused injury to the plaintiff." *Jovel v. Boiron Inc.*, No. 2:11-CV-10803-SVW-SH, 2013 WL 12164622, at *7 (C.D. Cal. Aug. 16, 2013) (cleaned up). "Statements made by a manufacturer through its advertising efforts can be construed as warranty statements." *Id.* (cleaned up). To state a claim for breach of implied warranty under California law, Plaintiffs must allege that the product (1) is not "fit for the ordinary purposes for which such good [is] used," or (2) does not "[c]onform to the promises or affirmations of fact made on the container or label if any." *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1106 (N.D. Cal. 2017) (citations omitted).

Boiron contends that Plaintiffs fail to state a claim of breach of warranty because Plaintiffs have not "produce[d] evidence showing that Defendant's representations are false." ECF No. 26-1 at 24. Boiron acknowledges that "Plaintiffs allege that they 'did not experience any pain relief,'" but contends that "the FAC is devoid of any facts to support this conclusory statement." *Id.* (internal citation omitted). As for the studies Plaintiffs cite in the complaint, Boiron argues that they "tested arnica montana for very specific ailments that were not alleged by Plaintiffs or within the scope of Plaintiffs' claims on Boiron's products." *Id.*

The Court rejects Boiron's arguments. As an initial matter, Plaintiffs need not produce any evidence at the pleading stage. *Locklin v. StriVectin Operating Co.*, Inc., No. 21-CV-07967-VC, 2022 WL 867248, at *4 (N.D. Cal. Mar. 23, 2022) ("at the motion to dismiss stage, complaints

United States District Court
Northern District of California

4

1  need not 'show' or 'establish' anything"). On the merits, Plaintiffs allegations properly state
2  breach of warranty claims. Plaintiffs allege that they experienced no pain relief after taking
3  Boiron's arnica products, and they cite studies which suggest that arnica provides no pain-relief
4  benefits. Those allegations support the plausible inference that Boiron promises its Arnicare
5  products provide pain relief when they in fact provide none. Moreover, Plaintiffs' allegations
6  track the allegations other courts have found sufficient to make out plausible warranty claims.
7  *See, e.g., Forcellati v. Hyland's, Inc.*, 876 F. Supp. 2d 1155, 1162-63 (C.D. Cal. 2012) (denying
8  motion to dismiss claim for breach of express warranty when plaintiff alleged that cold and flu
9  products failed to deliver the benefits promised on the packaging). The Court therefore denies
10  Boiron's motion to dismiss Plaintiffs' warranty claims.

### 2. Fraud Claims

12  Boiron first argues that Plaintiffs' fraud-based claims – their common law fraud, CLRA,
13  FAL, and UCL claims – should be dismissed because they do not meet the who-what-when-
14  where-how particularity requirements of Rule 9. Boiron next argues that Plaintiffs' fraud claims
15  should be dismissed because "because Plaintiffs are unable to establish that Boiron made a
16  misrepresentation regarding Arnicare Cream or Arnicare Tablets, knew it was a false
17  representation, or had an intent to defraud Plaintiffs." ECF No. 26-1 at 18.
18  Boiron's arguments are unpersuasive. First, Plaintiffs' complaint satisfies Rule 9's
19  requirements because it states that Boiron (the 'who') labeled Arnicare products with a label
20  promising pain relief (the 'what') during at least the four years before the complaint was filed (the
21  'when') and submitted examples of the labels of several Arnicare products (the 'where') and why
22  they were deceived by the label (the 'how'). *See Von Koenig v. Snapple Bev. Corp.*, 713 F. Supp.
23  2d 1066 (E.D. Cal. 2010). By arguing that Plaintiffs do not meet Rule 9's requirements because
24  they "do not identify the pain they were experiencing, the reasons for the purchase of the specific
25  product at issue, how they used it, and for how long, and whether they continue to experience the
26  pain symptoms after using the product," Boiron impermissibly expands Rule 9's requirements.
27  ECF No. 26-1 at 18. Rule 9 does not require "absolute particularity," "a recital of the evidence,"
28  or "anticipat[ing] and attempt[ing] to plead around all potential defenses." *United States v. United*

United States District Court
Northern District of California

*Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016) (cleaned up); *F.D.I.C. v. Varrasso*, 2012 WL 219046 at *7 (E.D. Cal. Jan. 23, 2012) (cleaned up). In short, Plaintiffs' allegations adequately put Boiron on notice about their fraud claims.

Second, Plaintiffs have properly pleaded the elements of a fraud claim – misrepresentation, knowledge of falsity, intent to defraud, justifiable reliance, and resulting damage. *Robinson Helicopter Co. v. Dana Corp.*, 102 P.3d 268, 274 (Cal. 2004) (citation omitted). As the Court already explained, Plaintiffs have plausibly alleged that Arnicare products promise pain relief but provide none. Plaintiffs have also plausibly alleged fraudulent intent. *See* ECF No. 25 ¶ 28 ("Defendant intends that consumers will read and rely on the Pain Relief Claims made in Defendant's advertising and labeling, and Plaintiffs and putative class members did read and rely on those claims to their detriment.").

Nor has Boiron established that its homeopathic disclaimer and money-back guarantee "rebut any allegation of fraudulent intent on the part of Boiron." ECF No. 26-1 at 19. For one, a disclaimer cannot save a misleading label. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939-40 (9th Cir. 2008) ("We disagree with the district court that reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box."). As for Boiron's money-back guarantee, it offers no support in law or logic for the argument that such a guarantee "rebut[s] any allegation of fraudulent intent on the part of Boiron." ECF No. 26-1 at 19. To the contrary, the Ninth Circuit has held in a case under the false advertising provisions of the Federal Trade Commission Act that "allowing a seller to rely on a money-back guarantee as a defense to [a false advertising claim] 'would make the false advertising prohibitions of the Act a nullity.'" *F.T.C. v. Pantron I Corp.*, 33 F.3d 1088, 1103 (9th Cir. 1994) (quoting *Montgomery Ward & Co. v. F.T.C.,* 379 F.2d 666, 671 (7th Cir. 1967); *see also Adkins v. Apple Inc.*, 147 F. Supp. 3d 913, 919 (N.D. Cal. 2014) (citing *Pantron*). Finally, Plaintiffs allege both justifiable reliance and resulting damage. Plaintiffs have therefore stated a valid fraud claim.

### 3. Substantiation

Boiron argues that Plaintiffs' CLRA, FAL, and UCL claims should be dismissed because

they hinge on a substantiation theory, which California courts have held is not actionable. *See Nat'l Council Against Health Fraud, Inc. v. King Bio Pharms.*, Inc., 107 Cal. App. 4th 1336, 1345 (2003) ("The Legislature has expressly permitted prosecuting authorities, but not private plaintiffs, to require substantiation of advertising claims.")

Boiron misreads the complaint. "Courts have been careful to distinguish between allegations that a defendant's advertising claims are actually false and allegations that such claims lack substantiation." *In re Clorox Consumer Litig.*, 894 F. Supp. 2d 1224, 1232 (N.D. Cal. 2012). And the complaint is clear that Plaintiffs' claims rest on allegations of falsity, not lack of substantiation. *See, e.g.,* ECF No. 25 ¶ 53 ("Although Defendant lacks scientifically valid substantiation for its claims that Arnica Products provide pain relief or other medicinal benefits, that is not the basis for the claims alleged here. Instead, the crux of this case is that – irrespective of Defendant's lack of substantiation – Arnica Products do not provide pain relief or other medicinal benefits, which is directly contrary to the product labeling and marketing."). California law's prohibition on private plaintiffs bringing substantiation claims is therefore irrelevant.

### 4. False Advertising

Boiron argues that Plaintiffs' false advertising claim should be dismissed because "Plaintiffs failed to meet" the "burden to plead . . . facts that show the claims Defendant made in connection with [the Arnicare] product are false or misleading." ECF No. 26-1 at 22 (cleaned up).

The Court rejects this argument for the same reasons it rejected Boiron's other arguments contending that Plaintiffs have not adequately alleged the Arnicare product labels are misleading: the complaint plausibly alleges that Arnicare products promise pain relief but provide none.

### B. Rule 12(b)(1)

Boiron argues that Plaintiffs lack standing to assert claims for products they did not buy. In *Melendres v. Arpaio*, 784 F.3d 1254, 1262 (9th Cir. 2015), the Ninth Circuit rejected that argument, holding that "any issues regarding the relationship between the class representative and the passive class members—such as dissimilarity in injuries suffered—are relevant only to class certification, not to standing." *Id.* at 1262 (quoting William B. Rubenstein, Newberg on Class Actions § 2:6 (5th ed.)). And this Court has repeatedly declined to dismiss on standing grounds

1   claims brought by plaintiffs seeking to represent a class of people who purchased different
2   products from the lead plaintiffs but who nonetheless suffered the same injury.  The Court has
3   explained that whether a plaintiff may represent those who purchased different products from her
4   is a question reserved for class certification, not the pleadings.  *See, e.g., Clancy v. The Bromley*
5   *Tea Co.*, 308 F.R.D. 564, 571 (N.D. Cal. 2013); *Peacock v. 21st Amend. Brewery Cafe, LLC*, No.
6   17-CV-01918-JST, 2018 WL 452153, at *10 (N.D. Cal. Jan. 17, 2018).  The Court here reaffirms
7   its view that the pleadings stage in a putative class action is not the right juncture to address the
8   standing of named class members to bring claims regarding products other than those they
9   purchased themselves.[2]

### C. Preemption and Primary Jurisdiction

Boiron also contends that Plaintiffs' complaint should be dismissed under the doctrines of preemption and primary jurisdiction.

#### 1. Preemption

Boiron first contends that the National Uniformity for Nonprescription Drugs ("NUND") provision of the Food and Drug Administration Modernization Act, 21 U. S.C. § 379r, expressly preempts Plaintiffs' state-law claims.  Under that provision, no state may "establish or continue in effect any requirement" that concerns "the regulation" of an over-the-counter drug when such requirement is "in addition to" or "not identical to" FDA regulations.  *Id.*  Boiron contends that provision expressly preempts Plaintiffs' requested relief because for Plaintiffs' claims "that Boiron engaged in fraudulent and misleading conduct by stating 'pain relief' in the labeling of its homeopathic drugs" to be true, "the California statutes would have to require labeling that is different from, and in addition to, the extensive federal regulatory scheme from the FDA and the FTC . . . ."  ECF No. 26-1 at 29.

Boiron next contends that federal law impliedly preempts Plaintiffs' state-law claims.

---

[2] This Court previously held in *Lilly v. Jamba Juice Co.*, No. 13-CV-02998-JST, 2013 WL 6070503 (N.D. Cal. Nov. 18, 2013), that "Plaintiffs do not have standing to assert claims related to products they did not buy." *Id.* at *2.  That holding no longer reflects the Court's views on this subject.

8

1    Boiron argues that "Congress provided for homeopathic drugs to be made legally available to
2    consumers," and "[b]oth the FDA and the FTC have upheld Congress' mandate with the CPG, the
3    FDA Draft Guidance, and the FTC Enforcement Policy that allow for the promotion of
4    homeopathic drugs." ECF No. 26-1 at 30 (citing 21 U.S.C. §§ 321(g)(1), 351 which includes
5    homeopathic drugs within the definition of "drug" that is within those agencies' authority). As a
6    result, Boiron contends that its marketing of "homeopathic drugs is not fraudulent, false, or
7    misleading." ECF No. 26-1 at 30.
8          Neither of Boiron's preemption arguments is persuasive. "Federal law preempts a lawsuit
9    based on state law claims when (1) Congress enacts a statute that explicitly preempts state law; (2)
10   federal law occupies a legislative field to such an extent that it is reasonable to conclude that
11   Congress left no room for state regulation in that field; or (3) state law actually conflicts with
12   federal law." *Allen v. ConAgra Foods, Inc.*, 2013 WL 4737421, at *3 (N.D. Cal. Sept. 3, 2013).
13   "In all pre-emption cases, and particularly in those in which Congress has 'legislated . . . in a field
14   which the States have traditionally occupied,' . . . we 'start with the assumption that the historic
15   police powers of the States were not to be superseded by the Federal Act unless that was the clear
16   and manifest purpose of Congress.'" *Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (quoting
17   *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)).
18         To support its preemption argument, Boiron "alludes generally to 21 U.S.C. § 379r(a),
19   which preempts state-law claims that impose a requirement on any drug that 'is different from or
20   in addition to, or that is otherwise not identical with' a requirement under the FDCA, the Poison
21   Prevention Act of 1970, or the Fair Packaging and Labeling Act." *Slowinski v. Forces of Nature,*
22   *Inc.*, No. 20 CV 2381, 2021 WL 1165099, at *3 (N.D. Ill. Mar. 26, 2021). But Boiron does not
23   identify any way in which Plaintiffs' state-law claims impose such requirements. As the court in
24   *Delarosa v. Boiron, Inc.*, 818 F. Supp. 2d 1177, 1189 (C.D. Cal. 2011) explained, the use of a
25   false or misleading label on over-the-counter drugs violates federal law. *See* 21 U.S.C. § 352(a)
26   (deeming a drug misbranded when "its labeling is false or misleading in any particular"). And
27   Plaintiffs' claims here – as in *Delarosa* – "would simply require [Boiron] to truthfully state its
28   efficacy or not sell its products." *Id.* at 1189-90. Thus, Plaintiffs' requested relief is neither

"different from, [n]or additional to, the requirements of the FDCA. *Id.* at 1189. *See also Slowinski*, 2021 WL 1165099, at *3 ("To the contrary, the FDCA prohibits misbranding of drugs, which occurs if the drug's label is 'false or misleading in any particular,' 21 U.S.C. § 352, and Plaintiffs['] state-law claims would also require Defendant to refrain from falsely or misleadingly label their products.").

For similar reasons, the Court also rejects Boiron's implied-preemption arguments. "[G]iven that Plaintiff's state law claims merely seek to impose requirements that are identical to what federal law already requires, to wit, truthful indications of use [Boiron's] label, it is difficult to imagine under these circumstances how the state law conflicts with, or poses an obstacle to, federal law," as implied preemption requires. *Jovel*, 2013 WL 12164622, at *12.

### 2.     Primary Jurisdiction

Boiron's final argument is that the Court should abstain from adjudicating this dispute because "the FDA and the FTC have primary jurisdiction" over Plaintiffs' claims and those "are the appropriate forums to determine the appropriate regulations for homeopathic drugs." ECF No. 26-1 at 30.

The Court is not persuaded. The primary jurisdiction doctrine "allows a federal court to refer a matter extending beyond the conventional experiences of judges or falling within the realm of administrative discretion to an administrative agency with more specialized experience, expertise, and insight." *Nat'l Commc'ns Ass'n, Inc. v. Am. Tel. & Tel. Co.*, 46 F.3d 220, 222-223 (2d Cir. 1995) (citation omitted). It does not, however, "require that all claims within an agency's purview be decided by the agency. Nor is it intended to secure expert advice for the courts from regulatory agencies every time a court is presented with an issue conceivably within the agency's ambit." *Brown v. MCI WorldCom Network Servs., Inc.*, 277 F.3d 1166, 1172 (9th Cir. 2002). Rather, the primary jurisdiction doctrine applies when a claim "requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency." *Id.* The crux of the issue in this case is whether the labels advertising Arnicare products as providing "pain relief" mislead consumers. That "determination does not require the particular expertise of the FDA [or the FTC]." *Musgrave v. ICC/Marie Callender's Gourmet Prod. Div.*,

2015 WL 510919, at *6 (N.D. Cal. Feb. 5, 2015).  The primary jurisdiction doctrine thus does not apply here.

## CONCLUSION

For the foregoing reasons, the Court denies Boiron's motion to dismiss.

**IT IS SO ORDERED.**

Dated: August 1, 2022



JON S. TIGAR
United States District Judge